# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| United States, | ) | |
| | ) | |
|     *Respondent*, | ) | |
| | ) | |
| v. | ) | Case No: 14 C 50343 |
| | ) | |
| John M. Volpentesta, | ) | |
| | ) | |
|     *Movant*. | ) | Judge Frederick J. Kapala |

## ORDER

Volpentesta's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 [1] is granted in part and denied in part. The concurrent 5-year terms of supervised release on Counts I, II, V, and VI are hereby vacated and reduced to concurrent 3-year terms of supervised release. The motion is denied in all other respects. Amended judgment to enter in Case No. 07 CR 50049. Certificate of appealability is denied. Volpentesta's motions for evidentiary hearing [23] and to correct filing errors [25][26] are denied. This case is closed.

## STATEMENT

On July 19, 2010, a jury convicted John M. Volpentesta of mail and wire fraud as well as federal tax violations. He is currently serving a 133-month sentence. Before the court is Volpentesta's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on the grounds that pre-trial, post-trial, and appellate counsel provided him with ineffective assistance. For the reasons which follow, Volpentesta's § 2255 motion is granted in part and denied in part.

### I. BACKGROUND

On October 23, 2007, the grand jury returned a 23-count indictment charging Volpentesta with multiple counts of mail fraud, 18 U.S.C. § 1341; wire fraud, 18 U.S.C. § 1343; failure to pay federal income taxes, social security taxes, and medicare taxes, 26 U.S.C. § 7202; and failure to file federal income tax returns, 26 U.S.C. § 7203. On December 7, 2007, the court appointed Assistant Federal Defender Paul Gaziano to represent Volpentesta. When Volpentesta complained of an inability to review the voluminous discovery materials provided to him in electronic format, the magistrate judge accommodated him by ordering the U.S. Marshals Service to periodically transport Volpentesta to the courthouse to review the 11,000 pages of discovery and 40 boxes of documents seized by the Internal Revenue Service ("IRS") from Volpentesta's office. On November 17, 2008, after Volpentesta's complaints about Gaziano's failure to provide him with printed hard copies of the discovery materials persisted, the magistrate granted Volpentesta's motion to substitute counsel and appointed attorney Mark Byrd. Volpentesta expressed dissatisfaction with Byrd as well, and the two had differing views on how to proceed with the case. The magistrate denied Volpentesta's

motions to substitute a new appointed attorney for Byrd on two occasions before appointing attorney Robert Fagan as co-counsel on July 14, 2009. On October 7, 2009, Volpentesta again asked that Byrd and Fagan be relieved of their appointments, citing difficulties in reaching his attorneys and concerns over their diligence, and requested that substitute counsel be appointed. The magistrate denied Volpentesta's request.

After the case was transferred to the district judge's trial calender, Volpentesta filed multiple pro se pre-trial motions while represented by Byrd and Fagan including a motion to dismiss Counts I-VI of the indictment, a motion to suppress all evidence specified in the government's Rule 404(b) notice, and a motion to suppress evidence seized from Volpentesta Construction, Inc. ("VCI") pursuant to a search warrant. Because Volpentesta maintained that his attorneys were ineffective for failing to file these motions, the court conducted a hearing. At the hearing, counsel for defendant explained that the pro se motions lacked merit, were frivolous, and would not be well-taken. In fact, one of Volpentesta's counsel stated that he was "100 percent confident that a Franks motion in this case is nothing more than a colossal waste of time that pulls us from our duty to get ready for trial in two months." This court found that Volpentesta failed to establish ineffectiveness of counsel and refused to hear the motions because defendant was represented by counsel.

Volpentesta moved to substitute his attorneys three more times claiming communication issues, lack of trust, a failure to file motions to dismiss the indictment, and that his attorneys were not working exclusively on his case. Each time the court denied Volpentesta's motions to substitute counsel. Ultimately, on May 21, 2010, the court granted Volpentesta's third motion to represent himself after determining that the waiver of his right to counsel was voluntary, warning him of the risks of proceeding pro se, and advising him against waiving his right to counsel. The court relieved Fagan of his appointment, but ordered Byrd to remain on the case as stand-by counsel. At that time, Volpentesta confirmed that he would be prepared to go to trial on June 1, 2010, as scheduled.

The day after he was permitted to represent himself, Volpentesta refiled his pro se motions to suppress the evidence specified in the government's Rule 404(b) disclosures and his motion to suppress evidence seized during the search of VCI pursuant to a search warrant. Two days later, Volpentesta moved to continue the trial for ninety days. The court granted Volpentesta a twenty-one day continuance finding that period sufficient to satisfy Volpentesta's needs. This court ordered briefing on Volpentesta's pro se motions and denied them both. With regard to the motion to suppress, this court determined that Volpentesta had not established that Special Agent Craig Peterson made a material misrepresentation in his warrant affidavit. In denying Volpentesta's motion to suppress Rule 404(b) evidence, the court found, among other things, that the testimony of certain fraud victims not named in the indictment was direct evidence of the scheme to defraud not subject to Rule 404(b). Next, Volpentesta refiled his motion to dismiss Counts I-VI of the indictment. After briefing by the parties, this court denied the motion finding Volpentesta's two main arguments to be frivolous.

Prior to trial, Volpentesta submitted evidentiary proffers of the expected testimony of twenty-three witnesses he wished to call at trial as well as his proposed subpoenas. The proposed subpoenas included the following language:

2

> You must also bring with you the following documents, electronically stored information, or objects (blank if not applicable):
>
>> Any and all records pertaining to the charged defendant, John M. Volpentesta, including but not limited to past records of any civil and/or criminal investigations involving John M. Volpentesta and any company or companies, corporation, or other business entities involving John M. Volpentesta as either the proprietor, officer, or shareholder of said entity.

The court held an <u>ex parte</u> hearing pursuant to Federal Rule of Criminal Procedure 17(b) and found that Volpentesta met his burden of establishing that the testimony of fifteen witnesses was necessary to an adequate defense and issued subpoenas for them to appear at trial. However, the court ruled that the above-quoted language would not be included in any issued subpoena without a showing by Volpentesta that he had reason to believe that any witness had such materials in his or her possession and that the materials were relevant, material, useful, and noncumulative. As of the date of the Rule 17(b) hearing, Volpentesta had not made such a showing.

At trial, the evidence established that Volpentesta owned and operated VCI, a construction company that built custom homes. Volpentesta defrauded VCI's customers by using their down payments to pay his personal expenses rather than construction costs, billing "overages" for work done by subcontractors and then retaining the money rather than using it to pay the subcontractors, submitting false documents to Ticor Title who then paid VCI for work performed by others, and charging customers for work that was never performed. The evidence also showed that Volpentesta defrauded individuals who invested in VCI by falsely promising that their investments would be secured by liens against homes that VCI was building, while concealing that the homes had insufficient equity to secure the investments. In addition, Volpentesta fraudulently obtained money from individuals for purported land sales by concealing that he did not hold title to the land or falsely representing that he would hold the investment funds in escrow until he obtained title. The evidence showed further that Volpentesta committed various tax violations by causing taxes to be deducted from the wages of VCI's employees and willfully failing to pay those taxes to the IRS, willfully failing to file federal unemployment tax returns for VCI, and willfully failing to file personal federal income tax returns. At the conclusion of the trial, the jury found Volpentesta guilty of two counts of mail fraud, two counts of wire fraud, eleven counts of failure to pay federal income taxes, social security taxes, and medicare taxes, and six counts of failure to file federal income tax returns.[1]

After the trial, a presentence investigation report ("PSR") was submitted to the court. The government moved for a two-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1 and for an upward variance from the advisory guidelines range maintaining that the loss calculation substantially understated the seriousness of the offense and that Volpentesta's criminal history category did not adequately reflect his history and characteristics. Byrd was reappointed to represent Volpentesta and filed an extensive sentencing memorandum opposing both of the government's motions and objecting to the fraud and tax loss calculations in the PSR, as well as the

---

[1] The jury acquitted Volpentesta on the mail fraud offenses alleged in Counts III and IV.

two-level enhancement for defrauding ten or more victims, the two-level enhancement for failing to report in excess of $10,000 in income from criminal activity, and the recommended restitution amounts. Byrd also moved for a downward variance from the advisory guidelines range based on a number of rationales.

Ultimately, this court granted the government's motions for an enhancement based on obstruction of justice and for an upward variance. The court also denied Volpentesta's motion for a downward variance and overruled his objections to the enhancements, tax and fraud loss amounts, and restitution amounts. The court ordered Volpentesta to serve concurrent prison sentences of 133 months on Counts I, II, V, and VI, which sentences were concurrent to lesser terms of imprisonment on the other counts of conviction.

On direct appeal, the Seventh Circuit affirmed after rejecting Volpentesta's three appellate contentions: (1) that he was deprived of his Sixth Amendment right to effective assistance of counsel; (2) that his waiver of his right to counsel was not knowingly, voluntarily, and intelligently given; and (3) that this court erroneously denied his motions to continue the trial once he had decided to represent himself. United States v. Volpentesta, 727 F.3d 666, 669 (7th Cir. 2013). The Seventh Circuit issued its decision on August 14, 2013, and its mandate on September 5, 2013. Volpentesta did not file a petition for writ of certiorari to the United States Supreme Court.

On July 30, 2014, Volpentesta filed a pro se motion asking the Seventh Circuit to recall its mandate maintaining that his appellate counsel did not inform him of the Seventh Circuit's decision and advise him of the available courses of action. In this motion, Volpentesta indicated that he became aware of the Seventh Circuit's decision on August 27, 2013. Volpentesta also indicated that he had informed his appellate counsel in a March 2013 email and in an August 29, 2013 letter that he wanted to file a petition for a writ of certiorari to the United States Supreme Court. On August 11, 2014, the Seventh Circuit denied Volpentesta's motion to recall its mandate. United States v. Volpentesta, 7th Cir. No. 11-2187, Dkt. No. 63. Volpentesta filed the instant § 2255 motion on October 11, 2014.

## II. DISCUSSION

Relief under § 2255 is "an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." Almonacid v. United States, 476 F.3d 518, 521 (7th Cir. 2007). Accordingly, habeas relief under § 2255 is "reserved for extraordinary situations." Prewitt v. United States, 83 F.3d 812, 816 (7th Cir. 1996). "To succeed on a § 2255 petition a convicted defendant must show that the district court sentenced him in violation of the Constitution or laws of the United States or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack." Id.

Claims that were raised on direct appeal and rejected or that could have been raised on direct appeal and were not are procedurally defaulted. See United States v. Peleti, 576 F.3d 377, 383 (7th Cir. 2009) (noting that once a claim has been rejected on direct appeal the law of the case doctrine bars the defendant from raising it in a § 2255 motion); Massaro v. United States, 538 U.S. 500, 504 (2003) (noting that if a § 2255 petitioner does not raise a claim in his direct appeal, that claim is barred unless the petitioner can demonstrate cause for the procedural default and actual prejudice). "[A]n ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under

4

§ 2255, whether or not the petitioner could have raised the claim on direct appeal." Massaro, 538 U.S. at 504.

Before granting an evidentiary hearing, the § 2255 "petition must be accompanied by a detailed and specific affidavit which shows that the petitioner had actual proof of the allegations going beyond mere unsupported assertions." Prewitt, 83 F.3d at 819 (quotation marks omitted). "[C]ourts may deny an evidentiary hearing where the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." Koons v. United States, 639 F.3d 348, 355 (7th Cir. 2011) (quotation marks omitted).

To succeed on an ineffective-assistance-of-counsel claim, a movant must demonstrate (1) his attorney's performance "fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). To satisfy the first prong, the court must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 690. A district court's "analysis begins with the strong presumption that the defendant's attorney rendered adequate representation of his client." United States v. Meyer, 234 F.3d 319, 325 (7th Cir. 2000) (quotation marks omitted). Therefore, petitioner must overcome a heavy burden to prove that his attorney was constitutionally deficient. Shell v. United States, 448 F.3d 951, 955 (7th Cir. 2006). If a defendant is unable to satisfy either prong of the Strickland test, then the court does not need to address the matter further. Strickland, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."). The Seventh Circuit has long held that "[c]ounsel is not ineffective for failing to raise meritless claims." Warren v. Baenen, 712 F.3d 1090, 1104 (7th Cir. 2013); Stone v. Farley, 86 F.3d 712, 717 (7th Cir. 1996) ("Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel."). In turn, there can be no resulting prejudice from a failure to raise a meritless issue on appeal. Martin v. Evans, 384 F.3d 848, 852 (7th Cir. 2004).

In addition to his claims of ineffective assistance of counsel analyzed below, Volpentesta argues within his § 2255 motion that this court should set aside his conviction on the grounds that his waiver of his right to counsel was involuntary and that his pre-trial attorneys were ineffective because they had a conflict of interest. However, Volpentesta raised these additional arguments on direct appeal, and the Seventh Circuit ruled against him. Accordingly, the law of the case doctrine bars the defendant from relitigating these issues on collateral review. See Peleti, 576 F.3d at 383.

### A. Ineffective Assistance of Pre-trial Counsel

Volpentesta contends that his pre-trial counsel were constitutionally ineffective in that (1) they failed to pursue the "missing discovery," and (2) failed to challenge several purported constitutional violations that happened at the outset of his case. However, the Seventh Circuit explicitly held that Byrd and Fagan were "entirely competent" and "provided competent representation to Volpentesta in spite of Volpentesta's refusal to cooperate with them." Volpentesta, 727 F. 3d at 676. As a result, the law of the case doctrine bars relitigation of these issues. See Peleti, 576 F.3d at 383.

5

In any event, these contentions are meritless.[2] Volpentesta maintains that the Federal Deposit Insurance Corporation ("FDIC") requires that banks retain records concerning real estate loan transactions and that the government failed to provide bates-stamped discovery of such documents. Volpentesta states, in conclusory fashion, that "[t]his discovery will provide for an actual innocence claim on several counts of conviction," and that his "defense was substantially prejudiced due to this missing discovery." Unfortunately, that is the extent of Volpentesta's specificity as to the relevance of this purported "missing evidence" and he provides no actual proof of these allegations going beyond mere unsupported assertions. See Prewitt, 83 F.3d at 819; see also Gray-Bey v. United States, 156 F.3d 733, 739 (7th Cir. 1998) (explaining that § 2255 petition must be accompanied by a specific, detailed affidavit showing that petitioner has proof of allegations going beyond unsupported assertions). In particular, Volpentesta fails to explain how these bank records concerning real estate loan transactions would show that he is actually innocent of any charge in the indictment. For instance, with respect to the mail fraud charge in Count I, Volpentesta does not even theorize how these bank records would show that he did not, in furtherance of his scheme to defraud, mail the Garcias an $8,900 VCI invoice for well and septic work that VCI did not perform and retain the money rather than paying Lake Cook Trenching the $6,400 it charged for actually performing the work. This caused Lake Cook Trenching to file a mechanics lien on the Garcias' property which the Garcias in turn had to pay an additional $6,400 to release. Volpentesta includes VCI computer data in the form of emails, accounting spreadsheets, scanned documents, and digital photos of project work in the "missing discovery," but he is even less specific as to the purpose that these materials would have served.[3] Missing discovery and supposed exculpatory documents somewhere within the forty boxes of documents seized from VCI have been a theme of Volpentesta's throughout this case, but so has a lack of specificity as to the type of document or how it would exculpate him.

Volpentesta also contends that pre-trial counsel failed to raise at the outset of the case that IRS Special Agent Lynette See abused her investigative powers in order to help her sister, Leanne See-Garcia, who was engaged in a dispute with Volpentesta over the construction of her home. Volpentesta has argued that it was the investigation that caused VCI to fail, not the alleged fraud, and that his pre-trial counsel should have brought this to light. This court has rejected "the investigation caused this to happen" explanation for the fraud Volpentesta exacted on his customers, investors, and vendors. This court also specifically found that Volpentesta failed to show that the prosecution was selective or vindictive in violation of Due Process Clause of the Fifth Amendment. See 3:07-cr-50049 Doc. # 256. Thus, any failure by pre-trial counsel to raise these arguments at the outset of the case was not deficient and did not result in prejudice. See Warren, 712 F.3d at 1104.

---

[2]Volpentesta contends that pre-trial, post-trial, and appellate counsel were ineffective for failing to pursue the "missing evidence." A separate analysis is not required for each, however, because appellate counsel has no duty to seek discovery and any contention that he was ineffective for failing to raise pre-trial or post-trial counsels' failure to pursue discovery on appeal is without merit for the same reasons the court has concluded that pre-trial counsel was not ineffective for failing to pursue the "missing discovery."

[3]At various points in his submissions, Volpentesta raises the "missing discovery" as a Brady violation but "unsupported assertions that the government suppressed [exculpatory] evidence" are insufficient to support a Brady claim. United States v. Jumah, 599 F.3d 799, 809 (7th Cir. 2010).

6

For these reasons, there is no basis to provide Volpentesta with § 2255 relief on the ground that his pre-trial counsel failed to provide him with effective assistance.

### B. Ineffective Assistance of Post-Trial Counsel

In his reply brief, defendant contends that "the sentencing errors that took place are numerous," but then goes on to discuss only the court's loss amount calculation based on his relevant conduct. Of course, as stand-alone § 2255 contentions these claims are barred because they could have been raised on direct appeal. Peleti, 576 F.3d at 383. Moreover, Volpentesta cannot advance this contention as ineffective assistance of post-trial counsel because Byrd did argue in Volpentesta's sentencing memorandum that the government failed to establish a sufficient nexus between the alleged scheme to defraud and the losses resulting from uncharged or acquitted conduct for purposes of relevant conduct under § 1B1.3 of the sentencing guidelines. Therefore, it would be improper for this court to provide Volpentesta with relief based on his claim of ineffective assistance of post-trial counsel.

### C. Ineffective Assistance of Appellate Counsel

In addition to the contentions discussed below, Volpentesta argues that his appellate counsel was ineffective for failing to raise on direct appeal the "missing evidence" and "constitutional violations occurring at the outset" issues discussed in sections A. and B. However, as concluded above, these contentions lack merit and therefore appellate counsel could not have been deficient for failing to raise them on appeal nor could Volpentesta have thereby suffered any prejudice. See Warren, 712 F.3d at 1104.

The court also notes that Volpentesta has not specifically argued that appellate counsel was ineffective for failing to argue on direct appeal that this court abused its discretion by including the loss resulting from defendant's relevant conduct in the total fraud loss amount. Nevertheless, the argument would have failed on appeal. This court concluded that $381,207.27 of losses resulted from defendant's conduct of conviction and $996,919.76 of losses resulted from acquitted or uncharged conduct, properly characterized as relevant conduct, for a total fraud loss of $1,378,127.03. Volpentesta argues that this court failed to connect the acquitted or uncharged conduct to the conduct for which he was convicted. The court disagrees because at sentencing it made specific findings establishing the required nexus with regard to each loss. For example, this court determined that Volpentesta executed the same scheme to defraud the Garcias in Count I, conduct for which he was convicted, and the Hickeys and St. Louises in Counts III and IV, conduct of which he was acquitted. Specifically, the court found that Volpentesta submitted false invoices for work performed by subcontractors and then failed to pay the subcontractors in order to infuse money into VCI, thereby enriching himself personally. As a result, the homeowners or subcontractors were left with the bill for the work. Volpentesta has not convinced this court that the Seventh Circuit would have found that this court abused its discretion by including losses resulting from acquitted and uncharged conduct in the fraud loss calculation as relevant conduct pursuant to § 1B1.3(a)(2) because the losses were the result of the same course of conduct or common scheme or plan as the charged conduct. As a result, appellate counsel was not ineffective for failing to raise this issue on direct appeal and Volpentesta suffered no prejudice. See Warren, 712 F.3d at 1104.

7

### 1. Failure to Challenge Order Striking Pro Se Motions

Volpentesta contends that his appellate counsel was ineffective because he failed to challenge this court's orders striking the pro se motions he filed while represented by counsel thereby violating his right to be heard. This contention fails on both Strickland prongs. Appellate counsel did not perform deficiently in deciding not to raise this issue on appeal and Volpentesta suffered no prejudice because it is well established that courts have no obligation to consider pro se motions filed by defendants with counsel. See United States v. Rollins, 309 F. App'x 37, 38 (7th Cir. 2009) ("Rollins has no right to file a pro se brief or motion in any court while counsel represents him."); United States v. Williams, 495 F.3d 810, 813 (7th Cir. 2007); United States v. Gwiazdzinski, 141 F.3d 784, 787 (7th Cir. 1998) ("A defendant does not have an affirmative right to submit a pro se brief when represented by counsel."). The court also notes that the record establishes that Volpentesta refiled his pro se motions after he was permitted to represent himself, and the court then heard and denied the motions.[4] Consequently, Volpentesta was indeed heard on the issues raised in his pro se motions.

### 2. Failure to Challenge Counts I-VI of the Indictment

Volpentesta contends that his appellate counsel was ineffective because he failed to argue that Counts I-VI of the indictment were defective. Volpentesta maintains that because Counts I-VI incorporated paragraphs 1-17 of the indictment there were multiple acts alleged as the scheme to defraud and it is impossible to discern which of these acts supported the guilty verdicts returned on Counts I, II, V, and VI. This argument is also without merit and therefore there was no deficient performance in failing to advance it on appeal and no resulting prejudice.

"An indictment is duplicitous if it charges two or more offenses in a single count." United States v. Haynes, 582 F.3d 686, 703 (7th Cir. 2009) (quotation marks omitted), vacated on other grounds by United States v. Vizcarra, 668 F.3d 516, 521–22 (7th Cir.2012)). "Duplicity creates a risk that the jury might return a less than unanimous guilty verdict, potentially exposes the defendant to prejudice at trial and sentencing, and in some cases subjects the defendant to double jeopardy." United States v. Pansier, 576 F.3d 726, 734 (7th Cir. 2009). However, §§ 1341 and 1343 expressly punish separate acts in execution of a scheme to defraud. See 18 U.S.C. §§ 1341 & 1343. "Schemes to defraud . . . are often multi-faceted and therefore the various means used in committing the offense may be joined without duplicity." United States v. Zeidman, 540 F.2d 314, 318 (7th Cir. 1976) (quotation marks omitted); see also 3:07-cr-50049 Doc. # 302, pg. 23; Pattern Criminal Jury Instructions of the Seventh Circuit, 18 U.S.C. §§ 1341 & 1343, pg. 393 & No. 4.04, pg. 42 (2012), available at https://www.ca7.uscourts.gov/Pattern_Jury_Instr/7th_criminal_jury_instr.pdf (providing that the government is required to prove one or more of the false pretenses, representations, promises and acts charged in the portion of the indictment describing the scheme to defraud but not all of them and that in order to find that the government has proved a specific false pretense, representation, promise or act the jury must unanimously agree on which specific false pretense, representation,

---

[4] Volpentesta argues that the pro se motions filed after he was permitted to represent himself were not the same as those presented when he was represented by counsel. The court has carefully compared the respective motions and to the extent they are different, the pro se motions filed after Volpentesta represented himself had additional material but included the same arguments advanced in the motions presented when he was represented by counsel.

8

promise or act the defendant committed). Consequently, the fact that the scheme to defraud alleged in paragraphs 1-17 is incorporated into each mail and wire fraud count alleging a different execution of the scheme to defraud does not render those counts duplicitous.

Furthermore, in addition to the instruction referenced immediately above, the jury also received other instructions preventing any non-unanimous verdict. For example, the jury was instructed to consider whether the requisite elements of each offense in the indictment were proven beyond a reasonable doubt "as described in Count __ of the indictment." See 3:07-cr-50049 Doc. # 302, pg. 22, Pattern Criminal Jury Instructions of the Seventh Circuit, 18 U.S.C. §§ 1341 & 1343, pg. 393 (2012), available at https://www.ca7.uscourts.gov/Pattern_Jury_Instr/7th_criminal_jury_instr.pdf. Another instruction provided that each separate use of the mail or interstate communication facilities in furtherance of the scheme to defraud constitutes a separate offense. See 3:07-cr-50049 Doc. # 302, pg. 27; Pattern Criminal Jury Instructions of the Seventh Circuit, 18 U.S.C. §§ 1341 & 1343, pg. 409 (2012), available at https://www.ca7.uscourts.gov/Pattern_Jury_Instr/7th_criminal_jury_instr.pdf. For these reasons, the court cannot afford Volpentesta extraordinary relief under § 2255 on his contention that he was denied effective assistance of appellate counsel when he failed to challenge Counts I-VI of the indictment as defective.

### 3. Failure to Challenge the Denial of Right to Compulsory Process

Next, Volpentesta contends that his appellate counsel was ineffective because he failed to argue that Volpentesta's right to compulsory process was violated when this court prohibited the document production language on Volpentesta's proposed trial subpoenas. Specifically, Volpentesta maintains that he was allowed to subpoena VCI's corporate attorney Robert Bless but was not allowed to have Bless ordered to produce the "legal document(s) pertaining to all the alleged victims."

Appellate counsel's performance was not deficient for failing to raise this issue on appeal because Volpentesta did not specifically identify for this court relevant admissible documents that were in Bless' or any other witness' possession. See United States v. Tokash, 282 F.3d 962, 971 (7th Cir. 2002) ("Rule 17(c) is not a discovery device to allow criminal defendants to blindly comb through government records in a futile effort to find a defense to a criminal charge. Instead, it allows only for the gathering of specifically identified documents which a defendant knows to contain relevant evidence to an admissible issue at trial."). Contrary to Volpentesta's assertion in his brief, the pages in the record which he identifies do not contain "strong compelling reasons for [production of] this material." Therefore, because the argument would have failed, appellate counsel was not deficient for not raising it. See Warren, 712 F.3d at 1104. Moreover, Volpentesta has not shown prejudice. Other than his conclusory statements such as "these missing documents tore a hole in the defense's ability to provide the jury with credible exculpatory evidence that would prove for [sic] actual innocence," Volpentesta has yet to specify what these documents are or how they were relevant, let alone how preventing him from subpoenaing these documents would have caused the appellate court to order a new trial. See Martin, 384 F.3d at 852. Thus, the court cannot afford Volpentesta relief under § 2255 on his contention that he was denied effective assistance of appellate counsel when he failed to argue that Volpentesta's right to compulsory process was violated.

9

### 4. Rule 404(b) Bad Acts Evidence

Volpentesta contends that his appellate counsel was constitutionally ineffective for failing to raise on appeal the admission at trial of bad-acts evidence pursuant to Federal Rule of Evidence 404(b) which Volpentesta maintains was irrelevant and prejudicial. This contention fails for a variety of reasons. First, in his § 2255 motion and supporting memorandum, Volpentesta failed to sufficiently identify the bad-acts evidence that he maintains was improperly admitted and has not explained how the court's Rule 404(b) analysis was faulty.[5] As a result, the contention is waived because the court cannot begin to analyze whether appellate counsel's failure to raise this issue on direct appeal was deficient or whether Volpentesta suffered prejudice. See United States v. Wescott, 576 F.3d 347, 356 (7th Cir.2009) (stating that unsupported and undeveloped arguments are waived); see also United States v. Holm, 326 F.3d 872, 877 (7th Cir. 2003) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." (quotation marks omitted)).

In his reply memorandum, Volpentesta states that he informed his "appellate counsel of the enormous amount of irrelevant 404(b) evidence that was presented by the government and that Volpentesta objected to in his pre-trial motions." Volpentesta identifies seven trial witnesses (subcontractors and suppliers) that he maintains offered only impermissible propensity evidence as "angry creditors" of VCI and provided only prejudicial testimony rather than evidence of the crimes alleged in the indictment. However, it has long been established that arguments in support of a § 2255 motion that are raised for the first time in a reply brief are waived. Wright v. United States, 139 F.3d 551, 553 (7th Cir. 1998). This is true even if the movant is proceeding pro se. Id. This is because the government does not have an opportunity to respond to the new arguments in the reply brief. Id.

Putting the waiver aside, the evidence provided by the seven witnesses Volpentesta references was not Rule 404(b) bad-acts evidence that should have been excluded but, rather, direct evidence of the charged scheme to defraud. Evidence of the scheme to defraud is not limited to the particular executions of the scheme alleged in the indictment. See United States v. Biesiadecki, No. 89 CR 39, 1989 WL 165039, at *1 (N.D. Ill. Dec. 18, 1989) (testimony of defrauded individuals not named in the indictment as victims admitted as non-Rule 404(b) evidence of existence of the alleged scheme to defraud). As such, even if this contention was properly raised, it would fail because appellate counsel was not deficient for failing to argue it on appeal and Volpentesta was not thereby prejudiced.

---

[5]The closest Volpentesta comes to identifying any bad-acts evidence is his reference to the following remark made by the attorney for the government during his opening statement: "It went to finance his high flying lifestyle, to pay for his expensive home, to buy his $50,000 Corvette, and to take trips to the casinos." This remark, of course, was not Rule 404(b) evidence. See Pattern Criminal Jury Instructions of the Seventh Circuit 2.01 (2012), available at http://www.ca7.uscourts.gov/PatternJuryInstr/7thcriminaljuryinstr.pdf ("The lawyers' statements and arguments are not evidence."). Instead, the remark forecasted that the evidence at trial would show that the purpose of the scheme to defraud charged in the indictment was defendant's own personal enrichment.

10

### 5. Restitution

Volpentesta argues that this court erred in determining the proper restitution amount and his appellate counsel was ineffective in failing to argue various errors made by this court in arriving at the restitution figure ordered in his case. The government argues that challenges to restitution orders, even couched as ineffective-assistance-of-counsel claims, are not cognizable under § 2255. The court agrees.

A restitution order does not present the type of serious error cognizable in a § 2255 proceeding. See United States v. Sloan, 505 F.3d 685, 697 (7th Cir. 2007) ("Restitution orders that sweep too much conduct into their calculations are issues that must be raised on direct appeal and do not rise to the level of a constitutional violation."); Barnickel v. United States, 113 F.3d 704, 706 (7th Cir. 1997) (Section 2255 "is not available to challenge an order of restitution imposed as part of a criminal sentence" because "the relief requested in such a case [does] not qualify as a right to be released" (quotation marks omitted)). This is true even if a prisoner has alleged ineffective assistance of counsel in relation to the issue. Barnickel, 113 F.3d at 705-06; United States v. Barren, No. 08 C 1778, 2008 WL 5070310, at *2 (N.D. Ill. Nov. 21, 2008) ("[E]ven when errors in restitution are raised as the basis of an ineffective assistance claim, Section 2255 is not available to challenge an order of restitution."). Thus, the court cannot afford Volpentesta relief under § 2255 on his claim that his right to effective assistance of appellate counsel was violated because counsel failed to advance certain arguments concerning restitution.

### 6. Criminal History Category

Volpentesta contends for the first time in his reply brief that his appellate counsel was ineffective for failing to challenge this court's purportedly improper enhancement of his criminal history category pursuant to U.S.S.G. §§ 4A1.1 & 4A1.3(a)(4) based on the age of the information utilized. This contention is waived because it was not advanced in Volpentesta's opening brief, see Wright, 139 F.3d at 553, and because it is perfunctory, undeveloped, and not supported with pertinent authority, see Holm, 326 F.3d at 877.

Waiver aside, the contention is wholly lacking in merit. In the PSR, the probation officer assigned three criminal history points based on Volpentesta's 1993 bank fraud conviction, for which he was originally sentenced to eight months in the Bureau of Prisons and then twelve months upon revocation of his supervised release in July 1996, to arrive at a criminal history category of II. Neither Volpentesta's counsel nor the attorney for the government objected to this determination and it was adopted by the court. Volpentesta does not explain how this determination was erroneous in light of the fact that the instant offenses commenced in January 2003 and he was not released from imprisonment for the bank fraud conviction until March 1997. See U.S.S.G. §4A1.2(k) ("In the case of a prior revocation of probation, parole, supervised release, special parole, or mandatory release, add the original term of imprisonment to any term of imprisonment imposed upon revocation."); U.S.S.G. §4A1.2(e)(1) ("Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted."). This court did grant the government's motion for an upward variance based on the theory that Volpentesta's criminal history category under-represented his true criminal history. However, the age of the information used to support this type of variance is not limited and, in any

event, the court relied in large part on Volpentesta's conduct which was the basis for the July 1996 revocation of his supervised release. Volpentesta also cites United States v. Mathews, in this portion of his reply, but that case deals with the categorical approach used to sentence under the Armed Career Criminal Act which was not at issue in Volpentesta's case, 453 F.3d 830, 833-34 (7th Cir. 2006). Therefore, even if this contention were not waived this court would conclude that appellate counsel was not ineffective for failing to challenge this court's determination of Volpentesta's criminal history category.

### 7. Supervised Release Term

Volpentesta was ordered to serve concurrent five-year terms of supervised release on Counts I, II, V, and VI, which terms were concurrent to lesser terms of supervised release on the other counts of conviction. Volpentesta argues that his appellate counsel was ineffective for failing to argue that the length of his supervised release term exceeds the applicable statutory maximum. The government concedes this issue and agrees that the concurrent five-year terms of supervised release imposed on the mail and wire fraud offenses in Counts I, II, V, and VI exceed the statutory maximum term of three years for these offenses which were not alleged to have affected a financial institution. See 18 U.S.C. §§ 1341 & 1343 (providing a twenty-year maximum terms of imprisonment except when violation affects financial institution and then providing for thirty-year maximums); see also 18 U.S.C. § 3583(b)(1) & (2) (providing a maximum five-year term of supervised release for Class B felonies, which carry a maximum term of imprisonment of twenty-five-years or more, and a maximum three-year term of supervised release for Class C felonies which carry a maximum term of imprisonment of twenty years). The PSR classified Counts I, II, V, and VI as Class B felonies with five-year maximum terms of supervised release, even though the issue of whether defendant's mail and wire fraud affected a financial institution was not submitted to nor decided by a jury. See Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). At sentencing, neither Volpentesta nor the government objected to this classification. As class C felonies, the supervised release terms of the convictions in Counts I, II, V, and VI should have been limited to three years. See 28 U.S.C. § 3583(b)(2).

This court may summarily set aside or correct an unlawful sentence without holding a resentencing hearing where the correction will not affect the other components of the sentence. United States v. Binford, 108 F.3d 723, 728 (7th Cir. 1997); 28 U.S.C. § 2255(b) ("If the court finds that the . . . sentence imposed was not authorized by law. . . the court shall . . . correct the sentence as may appear appropriate."). Therefore, that part of Volpentesta's sentence imposing concurrent five-year terms of supervised release on Counts I, II, V, and VI is hereby vacated and reduced to concurrent three-year terms of supervised release to run concurrently with the supervised release terms of all the other counts of conviction.

### 8. Failure to Petition for a Writ of Certiorari

Volpentesta contends that his appellate counsel was ineffective because he failed to file a petition for a writ of certiorari to the United States Supreme Court after the Seventh Circuit affirmed his conviction and sentence on direct appeal. In apparent recognition that he has no constitutional

12

right to the assistance of counsel in seeking discretionary review through a petition for a writ of certiorari, see Wyatt v. United States, 574 F.3d 455, 459 (7th Cir. 2009) ("[A] criminal defendant has no constitutional right to counsel to pursue a petition for a writ of certiorari. And where there is no constitutional right to counsel, there cannot be constitutionally ineffective assistance of counsel."), Volpentesta argues that his attorney deprived him of his right to such assistance under the Criminal Justice Act, see 18 U.S.C. § 3006A.[6]

Although the Seventh Circuit has not addressed this issue, the Sixth Circuit has held that a violation of a defendant's right under the CJA to effective assistance of counsel is not cognizable under § 2255. See Nichols v. United States, 563 F.3d 240, 250-51 (6th Cir. 2009) ("This circuit's procedural rules, standing alone, do not create a constitutional right or impose a constitutional duty. Even if we accept . . . that his counsel performed deficiently under our procedural rules, that performance would not be constitutionally deficient solely because of a failure to comply with our procedural rules."); Steele v. United States, 518 F.3d 986, 988 (8th Cir. 2008) (same); see also Bustamante v. United States, No. 08 C 3508, 2009 WL 1444716, at *8 (N.D. Ill. May 21, 2009) (denying movant's ineffective assistance of appellate counsel claim for failure to petition for certiorari because movant did not have a constitutional right to counsel in seeking a discretionary review of his appeal and because he could not claim that appointed counsel violated his statutory duties under the Criminal Justice Act). In this case, as in Nichols and Steele, it appears that Volpentesta's appellate counsel breached his duty under the Circuit's Criminal Justice Act Plan. However, the court agrees with the conclusion of the Sixth and Eighth Circuits that a violation of these procedural rules is not cognizable under § 2255. See Colby v. J.C. Penney Co., 811 F.2d 1119, 1123 (7th Cir. 1987) (stating that district courts in the Seventh Circuit should "give most respectful consideration to the decisions of the other courts of appeals and follow them whenever [they] can" (alteration and quotation marks omitted)).

Even if this ineffective-assistance-of-appellate-counsel claim were cognizable under § 2255, it would fail because Volpentesta did not suffer prejudice. See Steele, 518 F.3d at 988-89 (finding alternatively that the § 2255 movant did not show prejudice as a result of appellate counsel's failure to file petition for writ of certiorari because she failed to show that she would have succeeded in obtaining a writ of certiorari if counsel had filed a petition and a reasonable probability that she would have obtained relief as to her sentence). According to Volpentesta, he became aware that the Seventh Circuit affirmed his conviction and sentence on August 27, 2013, and requested in an

---

[6]The duty of appointed counsel with respect to a petition for a writ of certiorari is as follows:
After an adverse decision on appeal by this Court, appointed counsel shall advise the defendant in writing of his right to seek review of such decision by the Supreme Court of the United States. If, after consultation (by correspondence, or otherwise), the represented person requests it and there are reasonable grounds for counsel properly to do so, the appointed attorney must prepare and file a petition for writ of certiorari and other necessary and appropriate documents and must continue to represent the defendant until relieved by the Supreme Court. Counsel who conclude that reasonable grounds for filing a petition for writ of certiorari do not exist must promptly inform the defendant, who may by motion request this Court to direct counsel to seek certiorari.

The Plan of the United States Court of Appeals for the Seventh Circuit to Supplement the Plans of the Several United States District Courts within the Seventh Circuit, § V, Duties of Appointed Counsel, ¶ 3.

13

August 29, 2013 letter that his appellate counsel file a petition for a writ of certiorari. The petition had to be filed by December 4, 2013, ninety days after his conviction became final upon the issuance of the Seventh Circuit's mandate on September 5, 2013. See Sup. Ct. R. 13. At some point after December 4, 2013, Volpentesta became aware that no petition was filed and became obligated to file a motion in the Seventh Circuit requesting that the mandate be recalled to afford him an opportunity to file the petition if warranted. See United States v. Price, 491 F.3d 613, 615 (7th Cir. 2007). Volpentesta filed that motion and the Seventh Circuit denied it, presumably because Volpentesta did not establish reasonable grounds upon which counsel could advance a petition for certiorari. See id. at 616 ("[T]he duty of appointed counsel to file a petition for certiorari is tempered by the duty to refrain from filing 'frivolous' pleadings."). It must be remembered that "[r]eview on a writ of certiorari is not a matter of right, but of judicial discretion. A petition for a writ of certiorari will be granted only for compelling reasons." Sup. Ct. R. 10. Even now, Volpentesta has not identified arguable grounds that could have been raised in a petition for a writ of certiorari, much less identified compelling reasons to grant the writ or a reasonable probability that he would have obtained relief.

For these reasons, the court concludes that appellate counsel's failure to file a petition for a writ of certiorari was not ineffective assistance of appellate counsel in violation of Volpentesta's constitutional rights. Volpentesta's claim that he was deprived of his right to effective appellate counsel under the Criminal Justice Act is not cognizable under § 2255. Even if that claim were cognizable, this court would not afford him relief because he has failed to show that he suffered prejudice due to appellate counsel's failure to file the petition.

## III. CONCLUSION

For the reasons set forth above, the motion to set aside, modify, or vacate the sentence pursuant to § 2255 is granted in part and denied in part. The concurrent five-year terms of supervised release on Counts I, II, V, and VI are hereby vacated and reduced to three-year terms of supervised release concurrent with the supervised release terms of all the counts of conviction. The motion is denied in all other respects. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the court must consider whether to grant a certificate of appealability. Based on the foregoing analysis, Volpentesta has not established that reasonable jurists could debate the correctness of the court's decision. Accordingly, the court declines to issue a certificate of appealability.

Date: 7/27/2015         ENTER:

_____
FREDERICK J. KAPALA
District Judge

14